Good morning, Your Honors. I'm Paul Angioletti. I represent Geraldo Castillo. Mr. Castillo's 46-month top-of-the-guideline sentence is the product of an 8-level enhancement which was triggered by a failure, a single failure, to appear in court 16 years earlier on a case that was ultimately dismissed. This enhancement, based on this failure to appear in court 16 years earlier, increased his guidelines range from 15 to 21 months to 37 to 46 months. You're not suggesting that the guidelines calculation was wrong. No, I'm not suggesting the guidelines calculation was wrong. What I am suggesting is that I guess the best way to look at it is when I represented Justin Dorby in United States v. Dorby, I asked the court to look at the child pornography guidelines as a flawed guideline, and the court did so. I looked at the two L1.2 enhancements. Those enhancements are also flawed in a similar way. It's substantially unreasonable to have an 8-level enhancement for a prior conviction. I'm saying that the disenhancement based on this conduct leads to a substantively unreasonable sentence. There were other factors in this sentence, though. This was a person, an undocumented alien who was arrested for firearms possession and receipt and was deported, but then kept coming back into the country illegally, and he did it twice more. He was deported after each one. He once jumped bail in State court. This guy was in total disregard of the laws of this country, and he was sentenced within the guideline range. As I point out, the reentry history, although it is disturbing, according to the research by the Sentencing Commission, and I cite these statistics in my brief, the average illegal reentry defendant has been deported, has been illegally reentered 3.2 times previously. But he had a prior conviction for illegal reentry previously, for which he received a 36-month sentence. So in your view, when you do it again, the sentence should go down? I'm not – it's an open question as to – and I – there are some – in our brief I cite some discussion by the district court judges having – who have had to apply these guidelines. And some of the district court judges feel like more time does not necessarily equal deterrence. Sure. I think judges may think that, of course. But I think the issue for you is whether or not the decision to impose this guideline sentence was substantially unreasonable, that it was unreasonable for a judge to reach that conclusion. That's a pretty tall order. I think the flaw in this sentence is that you need to look at what generates that guidelines range. It's almost like there's a presumption that – this is his guideline range, 37 to 46 months. And therefore, a sentence – eight-level enhancement is appropriate, right? Explain why you say that. All right. The one thing I will point out is – I'll address it in the time we have here. I would commend to you – I'm asking you why was the eight-level enhancement inappropriate? Okay. Because the oddity of the 2L1.2 enhancements is that they are the only enhancement in Chapter 2 that focuses on prior convictions as a specific offense characteristic even though the prior offense has no factual nexus to the instant offense of reentry. In other words, the fact that in 2002 he failed to appear in court on a case that was ultimately dismissed did not make his illegal reentry worse. That's how the 2L1.2 enhancements are different. If you look at enhancements in other – in other crimes, like if you look – okay, the child pornography enhancement for sadomasochistic content. Clearly, that makes the crime worse. Why is it unreasonable to look at the fact that some years earlier he had engaged in other criminal conduct? Well, because in – the Commission in 2016 realized that stale convictions should not be used for these enhancements. And that was a positive change. Unfortunately, because of – What if there were subsequent convictions after that earlier one, as here? I mean, including one for possession of a gun. Does that not provide further support for taking into account the longer history? I mean, in other words, if that had been the only conviction, it was 16 years earlier and there was nothing else since, you know, the argument makes sense, perhaps. But there were subsequent additional criminal activities. Well, the gun conviction was too old to generate criminal history points. So if you look at his criminal record after that, you have a decidedly minor criminal record. Why do you say minor? He got a sentence of 16 to 4 years for that State charge, right? No, I'm talking about subsequent to the deportation and the illegal reentry. After that charge. Why do you separate it out? I mean, you know, these are 3553A factors that the judge is looking at, and criminal history is relevant under those factors. And there's no limit on that. I mean, he may not have the criminal history points that would boost his range, but from based upon that. But those are not the judge isn't prevented from considering those things. But what I'm saying is if you certainly a firearms charge, a possession of firearms charged by an illegal alien is serious. Subsequent to that, on his initial returns, which concededly were illegal, the only things you have, 2010, misdemeanor possession of marijuana, 2017, misdemeanor patronizing a person for prostitution, sentence time served. So it's. Five prior convictions, right? I believe, counting them up, there were five prior convictions. I'm not the only ones I'm thinking. I think there's the firearms, the misdemeanor possession, and the patronizing a person for prostitution. And then, yeah, I think you're right. Because if you're counting the illegal reentry convictions. Why is it unreasonable for a court to look at older convictions if it is part of a history that extends, that includes five convictions? Because the court can look at the older convictions, but what I go back to is the flaw in the 2L1.2 enhancement creates an inflated guideline. Well, it definitely creates an inflated guideline. The issue is unreasonable inflated guideline. And I think it is because if it were not for quirks in timing, okay? He committed the bail jump in 2002. He was convicted in 2006 because he had no conflicts with the law because otherwise the warrant would have fallen. The letter of the amendment in 2016 is to preclude stale convictions. He didn't fall within the letter, but he certainly fell within the spirit of that amendment. He wasn't convicted until October 2006, but he got a 16-month sentence for that bail jump. You seem to be sort of just sort of throwing it off like it's kind of a joke. No, I'm not throwing it off like it's kind of a joke. It's a 16-month sentence he received. It was longer than he got for the possession of the firearm. It's a 16-month sentence, but it's also from 2002. No, it's a conviction from 2006. He was gone from 2002 to 2006 and wasn't available to them, but the crime continued throughout, right? But what I'm saying is that if it's through quirks in timing, I see that I'm about to trespass upon the Court's time. Can I finish up? It's through quirks in timing that he didn't fall within the spirit of the 2016 amendment, that he didn't fall within the letter of the 2016 amendment. In other words, the act was a stale act. The conviction was not considered stale under the terms of the amendment. When did you think the act ended, his failure to appear? Was it just the one day he didn't show up or all the days in between where he didn't show up? Well, theoretically, it's all the days in between until the time he's involuntarily returned on the warrant. That would not be stale, would it? No, but I think the focus should be on the problem that counting that conviction as an aggregating factor to the illegal reentry doesn't make sense. I know the guidelines do it, but I'd ask you to consider whether that makes sense. Did that failure to appear in 2002 and up until 2006, did that aggravate his crime of illegal reentry in 2016? Did that make the 2016 illegal reentry worse? All right. Thank you. And I think you'll see that the answer is no. You have some time for rebuttal. Thank you, Your Honor. We'll hear from the government. Good morning, Your Honors. May it please the Court. Eleni Floater representing the government on appeal. Your Honors, the district court's guideline sentence should be affirmed for the following reasons. First, Mr. Castillo's guideline sentence of 46 months' imprisonment was reasonable, as the sentencing transcript makes clear. At sentencing, Mr. Castillo not only did not contest the calculation of his guideline sentence as appropriate, but he also explicitly stated that a guideline sentence would be reasonable in his case. And that is precisely what Mr. Castillo received, a guideline sentence. In rendering Mr. Castillo's sentence, Judge Castell considered the appropriate guidelines range as well as several 3553A factors, including Mr. Castillo's personal history and circumstances, such as Mr. Castillo's reasons for leaving Mexico when he did, as well as his criminal history and multiple unlawful reentries into this country, and the seriousness of the offense before the court. Giving due consideration to all of the party's submissions and these factors, Judge Castell gave Mr. Castillo a sentence that he found was appropriate to serve the aims of promoting respect for the law, the need for specific and general deterrence, and to avoid unwarranted sentencing disparities among those convicted of similar conduct. At bottom, this is not an exceptional case where Judge Castell's sentence cannot be located within the range of permissible decisions. And accordingly, this Court should find that Mr. Castillo's sentence was not substantively unreasonable. Second, to the extent that Mr. Castillo is arguing that he should have received a downward departure because his 2006 bail-jumping conviction was stale or excessively drove up his guidelines range, he has waived those arguments. And those arguments are substantively wrong in any event, as the district court committed no error in sentencing. Mr. Castillo did not object to the guidelines range calculated, as I discussed earlier. He did not seek a downward departure. He did not seek a downward variance. And he explicitly argued that a sentence within the applicable guidelines range would be appropriate. And so he's waived those arguments before this Court. And after the sentence was imposed, he did not object? That is correct, Your Honor. Okay. Third, Mr. Castillo's assertion that his 2006 bail-jumping conviction was improperly double-counted is also waived and is incorrect as a matter of law under the precedent of this circuit. At sentencing, the parties agreed that Mr. Castillo's bail-jumping conviction would be considered both for purposes of enhancing his offense level as well as for calculating his criminal history. And Mr. Castillo has thus waived the double-counting of that bail-jumping conviction argument on appeal. Moreover, under the law of the circuit set out in United States v. Pereira, and as Mr. Castillo recognizes in his appeal, it is well-established in the circuit that the district court does not err when it counts a prior offense to calculate both the offense level as well as the criminal history category, so long as the offense itself is appropriately counted as part of, receives criminal history points. Thus, the bail-jumping conviction was not improperly double-counted, as Mr. Castillo suggests. Fourth and finally, Mr. Castillo's various arguments that he should have received a more lenient sentence were fully considered by the district court. Judge Castell considered that the underlying charges associated with Mr. Castillo's bail-jumping conviction were in fact dropped. He also considered the nationwide statistics for average sentences for unlawful reentry defendants for the year 2013 and Mr. Castillo's mitigating personal history and characteristics. Weighing all of the factors and after careful consideration, Judge Castell found that a guideline sentence of 46 months was appropriate. Even if other judges would have weighed the factors differently, that is not sufficient to render Mr. Castillo's sentence substantively unreasonable. There was no error of fact, there was no error of law, and there is no reason for this court to disturb the considered judgment of the district court. For all of these reasons, the judgment of conviction should be affirmed. Unless the court has any questions for the government, the government will rest on its brief. Thank you. We'll hear the rebuttal. As they did in their brief, the government again gives me an argument that I didn't make. I didn't say that double counting was improper. Clearly, the case law says that it is. What I am saying is that double counting is allowed because it's supposed to measure two things. It's counted for criminal history because it's supposed to measure the likelihood of recidivism. It's counted as an enhancement because it is supposed to reflect the seriousness of the crime. And moral culpability, right? Yes. What I am saying is that it is a — that the flaw in the application to the seriousness of the crime, to the enhancement, is in no way does that bail-jumping conviction constitute something that made his illegal reentry worse. Why? That is the flaw in the double counting. It's in respect of the law, isn't it? I mean, he has a prior gun possession, too. But at that point, he was a fugitive for years, right? But that — 2002 to 2006, he was a fugitive. But that did not aggravate the circumstances of his illegal reentry. That is why that enhancement is different from the other Chapter 2 enhancements and that's why there is a danger that it leads, as it did here, to a substantively unreasonable result. Thank you very much. Thank you. We will conclude our decision. The final two cases are on submission. Accordingly, I'll ask the clerk to adjourn. The court stands adjourned.